CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 20 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAMIEN JERMAINE BARNER, | )<br>)<br>) |
| Plaintiff, | ) Case No. 7:08CV00376<br>) |
| v. | )<br>) **MEMORANDUM OPINION** |
| SGT. BENTLEY, ET AL., | )<br>) By: Glen E. Conrad<br>) United States District Judge |
| Defendant. | ) |

Plaintiff Damien Jermaine Barner, a Virginia inmate proceeding pro se, brings this action as a civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, Barner alleges that prison officials physically assaulted him, in violation of his constitutional rights.[1] The matter is now before the court on a motion for summary judgment submitted by Defendants Hardison and Mullins.[2] Upon review of the record, the court finds that the defendants are entitled to judgment as a matter of law.

---

[1] Barner raised additional claims in his complaint. However, by earlier opinion and order, the court granted defendants' prior motion for summary judgment as to all but his claim of excessive force on the grounds that he had failed to exhaust administrative remedies, pursuant to 42 U.S.C. § 1997e(a).

[2] The court notified plaintiff of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and warned plaintiff that judgment might be granted for the defendants if he did not respond to the motion by filing affidavits or other documents contradicting the government's evidence or otherwise explaining his claims within the time allotted by the court. The Roseboro notice also informed Barner that if he failed to respond in some fashion to the defendants' motion, the case could be dismissed. Barner moved for one extension of time to respond to the motion. However, the time granted to him has expired, and he has submitted nothing further to contradict defendants' evidence. Based on the Roseboro notice warning, the court could dismiss the action for failure to prosecute. Because defendants have been put to the burden of submitting evidence on which they are entitled to judgment as a matter of law, the court will, instead, address their motion and grant judgment.

## Background

### A. Plaintiff's Allegations

Barner's submissions allege the following sequence of events at Wallens Ridge State Prison on which his claims are based. On April 28, 2007, at about 4:40 p.m., Barner asked Officers Harrison and Meade to call a sergeant to speak with him about his being denied access to the dining hall. Sergeant Bentley then came to Barner's cell and asked, "What's the problem?" As Barner started to explain, Bentley pulled out a can of pepper spray and, without warning, sprayed the substance in Barner's face and eyes. Barner staggered away from the officer in surprise. Temporarily blinded by the pepper spray, Barner could not see which officer took each of the acts that followed. An officer forcefully grabbed Barner and slammed him into the wall, causing injury to Barner's head. Then, one of the officers slammed the inmate to the floor. Attempting to break his fall with his hand, Barner suffered injury to his left "pinky" finger. While Barner was on the floor on his stomach, an officer pressed his knee into Barner's back, causing injury to his lower back, and forced his arms into awkward and painful positions.

The officers handcuffed Barner at this point and escorted him to the segregation pod. Once Barner was inside a cell in that pod, Bentley ordered him to get on his knees. Barner said that he could not do so because he had been injured. Bentley and other officers slammed Barner to the floor. With his hands cuffed, Barner could not break his fall and further injured his head and back. An officer grabbed Barner's right index finger and twisted it. Bentley said, "When I give you an order do what I say. You hear me?" The officers yanked Barner by his arms until he was standing and shut the cell door behind him. Bentley ordered him to put his hands through the tray slot in the door so the cuffs could be removed, and Barner complied. An officer yanked him by the cuffs several times, causing the cuffs to cut into his wrists and causing further injury to his back. Barner denies that he resisted or posed any sort of threat towards the defendants at any time during these incidents.

Later that night, Barner submitted a request for medical treatment. About 7:30 p.m., he was moved to another segregation pod where he was forced to wear clothes soaked in pepper spray. He was not afforded a shower or fresh clothes until the following day. On May 1, 2007, a nurse responded to his medical request form, stating that he was on the sick call list to see a nurse. The next day, a nurse made a visual examination of Barner through his cell door window. The following week, Dr. Thompson asked Barner about his injuries. Barner describes his injuries from the April 28, 2007 incident as follows: back pain, broken left pinky finger, jammed right index finger, "spranged" right wrist, cuts to each wrist, and head injuries. The doctor provided no medical treatment and told Barner to "just lay down and rest."[3]

## B. Defendants' Evidence

In their affidavits, defendants Hardison and Mullins offer additional details about the events of April 28, 2007. That evening, Hardison was working in the D-5 general population pod where Barner was housed. After inmates had begun returning from the chow hall to their cells to prepare for lock down, Hardison noticed that Barner was not in his cell. He located the inmate and instructed him to return to his cell. Barner refused, stating that he had been in the shower when chow was called and so had not had an opportunity to eat. First Hardison and then other officers in the pod repeated the order for Barner to return to his cell. The inmate still did not comply. A call was placed to Sgt. Bentley for assistance. When the sergeant arrived in the pod, he ordered Barner to return to his cell. Barner then became agitated and began swinging his arms toward the officer in a threatening manner, repeating his excuse that he would not go back to his cell because he had missed chow. Bentley first told Barner to put his arms down and then told the inmate to place his arms behind his back so that he could be restrained. Barner refused and became more agitated and aggressive. At that point, Bentley sprayed Barner with a one-half to

---

[3] Barner's claims that he received inadequate medical treatment after the alleged assault were dismissed in the court's earlier opinion, because he failed to exhaust administrative remedies.

- 3 -

Case 7:08-cv-00376-GEC-mfu    Document 38    Filed 07/20/09    Page 3 of 10    Pageid#: 225

one-second burst of O.C. spray to his facial area. Because Barner still refused to place his hands behind his back or lie down, Bentley used a "hands-on" technique to place Barner on the ground.

Once Barner was on the ground, Officers Mullins and Hardison assisted Bentley in handcuffing the inmate. When he was restrained, the officers helped Barner to his feet and he was escorted to a segregation cell, D-402. As the party neared the cell, Barner turned aggressively toward Mullins. To gain control of the situation again, Sgt. Bentley then forcibly placed Barner on the ground once more. When it appeared that Barner would cooperate, officers helped him to his feet and placed him inside the segregation cell without further incident.

Defendants also offer the affidavit of Nurse Collins, who states that on April 28, 2007, she was called to the segregation pod to see whether inmate Barner required medical assistance after having been sprayed with O.C. spray. Collins found Barner at the sink in his cell, flushing his eyes with water. She asked if he had sustained any injuries. He walked to the cell door and stated to her that he had a sprained ankle, a bump on his knee, and a broken pinky finger. Collins asked to see these injuries, but Barner returned to the sink to continue flushing his eyes with water. When Barner refused to comply with several requests that he show her his injuries, Collins left his cell door and documented that he had refused assessment or treatment.

Collins further states that, according to Barner's medical records, he was seen at his cell door on May 2, 2007, in response to a sick call request. He claimed to have a concussion, a sprained ankle, and a knot on his head. He also complained of back pain. He claimed that officers jumped on him when he was not doing anything wrong. The nurse checked his eyes and they were PERRL. A check of his head revealed no visible lump. A check of his pinky finger indicated that no swelling was visible, and he could bend the finger. He repeated his back pain complaint, so the nurse placed him on the sick call list for assessment by the doctor.

The doctor met with Barner on May 4, 2007, at his cell door. He noted that the inmate complained of pain and said he could hardly move. The doctor noted that Barner had no deformities, that his gait was normal, and that his complaint was "fictitious." A few days later,

on May 6, 2007, when medical staff conducted the quarterly medical check of the inmates in the segregation unit, Barner refused to be assessed.

### Discussion

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986).

A verified complaint by a pro se prisoner based on personal knowledge is the equivalent of an opposing affidavit and may, standing alone, defeat a motion for summary judgment. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Where a pro se plaintiff fails to respond to defendants' specific evidence contradicting the conclusory allegations of his complaint, however, defendants may be entitled to summary judgment. Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979). Moreover, [i]f the opposing party does not so respond [to defendants' motion], summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). Disposition by summary judgment is appropriate where the record as a whole could not lead a rational trier of fact to find for the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### A. Excessive Force

"After incarceration, only the unnecessary and wanton infliction of [more than de minimis] pain on prisoners constitutes cruel and unusual punishment" in violation of the Eighth

Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotations omitted); Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

> For an inmate to prove an excessive force claim, he must satisfy not only the subjective component that the correctional officers acted with a sufficiently culpable state of mind, but also the objective component that his alleged injury was sufficiently serious in relation to the need for force to establish constitutionally excessive force.

Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998). Plaintiff must prove that the force was applied "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." Stanley, 134 F.3d at 634 (quoting Whitley, 475 U.S. at 320-21). This determination considers such factors as the amount of force used as related to the need for force, the threat reasonably perceived by the officers, and any attempts the officers made to "temper the severity of a forceful response." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). An inmate's evidence is legally sufficient to go to the jury on the subjective prong of the analysis only if "the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322.

To prove the objective aspect of his excessive force claim, the inmate "must show that correctional officers' actions, taken contextually, were objectively harmful enough to offend contemporary standards of decency." Stanley, 134 F.3d at 634 (internal quotations omitted). This part of the analysis "evaluates the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose." Id. Prison administrators are entitled to broad deference in determining what policies and practices are necessary to preserve order and security. Id.

A law enforcement officer or prison official may be liable under § 1983 under the theory of bystander liability.

> [I]t is well-established that an omission to act, when coupled with a duty to act, may provide a basis for liability. . . . If a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly.

- 6 -

Randall v. Prince George's County, 302 F.3d 188, 203 (4th Cir. 2002) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11- 12 (2d Cir.1988) (observing that officer who stands by and does not seek to assist victim could be "tacit collaborator").

No constitutional issue arises where an officer's use of force was de minimis; thus, de minimis injury can be conclusive evidence that the use of force was not unconstitutional. Norman v. Taylor, 25 F.3d 1259, 1262, 1263 (4th Cir. 1994) ("[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis."). However, the Fourth Circuit recognizes that some forms of force may leave little or no enduring injury and yet cause an impermissible level of pain; in such circumstances, either the force is of a sort "repugnant to the conscience of mankind" and therefore outside the de minimis force exception or the pain itself constitutes more than de minimis injury. Id. at 1263 n.4.

### B. Defendants' Motion for Summary Judgment

The court construes Barner's allegations as claiming four related, but separate incidents on April 28, 2007 when officers used excessive force against him or failed to prevent the use of excessive force by other officers: (1) in the pod when Sgt. Bentley sprayed Barner in the face with O. C. spray; (2) when one officer or another slammed him into a wall, slammed him to the floor, causing injury to his pinky finger, pressed a knee into his back, and pulled his arms into painful positions, while in the process of restraining him for transport to the segregation unit; (3) at the segregation cell when Barner allegedly told officers that his injuries prevented him from getting to his knees as ordered, one officer or another slammed him to the floor, causing further injury to his back and head, twisted his index finger, and yanked him by his arms to a standing position; and (4) while removing Barner's cuffs through the tray slot, an officer jerked on the cuffs, causing cuts to his wrists and further injury to his back.

- 7 -

### 1. Use of Chemical Agent

To succeed on this portion of his case, Barner must demonstrate evidence on which he could prove that Bentley used O.C. spray against him with the sole purpose of inflicting harm and that the officer's action caused him more than de minimis pain. Barner has not met either of these requirements. First, short of saying that he was temporarily blinded by the spray in his face, he does not allege that the spray caused him any significant discomfort or long term, adverse effects. Defendants' evidence indicates that he was able to wash the chemical off his face and out of his eyes as soon as he reached the segregation cell. Moreover, Barner does not allege that he sought medical treatment at any time related to his exposure to O.C. spray. Hence, Barner fails to allege facts on which he could persuade a fact finder that the spray caused him more than temporary, de minimis physical discomfort. Under such circumstances, Barner's failure to allege more than de minimis injury is conclusive evidence that the use of force in this instance was also de minimis and, therefore, not unconstitutional. Norman, 25 F.3d at 1263.

Moreover, Barner also fails to present any genuine issue of material fact in dispute as to whether Sgt. Bentley applied the spray in a good faith effort to restore order and discipline. Barner asserts that he was not posing a threat. However, defendants offer evidence that Bentley applied the spray only after Barner had repeatedly defied direct orders to return to his cell.[4] This evidence is not inconsistent with Barner's allegations, and he has not offered any evidence to contradict defendant's affidavits. Defendants could reasonably have perceived his continued refusal to comply with officers' direct orders to be, in and of itself, a threat to the internal discipline and security of the prison. Having attempted verbal orders to achieve his compliance, officers acted reasonably in using another method to convince Barner to do as directed. Bentley's use of O.C. spray as a means of achieving Barner's compliance with officers' orders, as a subsequent resort, was less likely to be harmful than the officers' next resort, the use of "hands

---

[4] Defendants' affidavits also state that Barner was swinging his arms in a way defendants perceived to be threatening and that he defied two orders from Bentley to place his hands behind his back.

- 8 -

on" force. See Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (finding that some use of pepper spray in a cell extraction is warranted "to incapacitate the inmate prior to committing staff to the procedure") (internal quotations omitted). As Barner fails to allege facts on which a reasonable fact finder could return a verdict finding Bentley's actions malicious or disproportionate to the situation, or that Barner suffered more than de minimis injury, defendants are entitled to judgment as a matter of law regarding this claim.

### 2. Use of Physical Force

Barner's remaining claims allege that officers used physical force against him, first in their efforts to put him in restraints and then in placing him in his new cell in the segregation area. As to all of these claims, Barner fails to present any genuine issue for trial as to whether his alleged injuries were sufficiently serious in relation to the need for force.

Defendants offer evidence that the medical professionals who examined Barner did not find any condition requiring medical treatment. First, the nurse who checked him after he had been placed in the segregation cell states that although he told her he had suffered a sprained ankle in the altercation, he walked back and forth between the sink and the cell door while she watched. She also states that when she offered to examine his other injuries, he refused the offer by failing to comply with her request to see the injuries. When he was seen at sick call four days later, on May 2, 2007, the nurse's examination indicated that he was not suffering from symptoms consistent with the injuries he claimed to have suffered. He claimed that his finger was broken, but he was able to bend it and it was not visibly swollen. The nurse could not see any visible knot on his head, as he claimed.[5] Nevertheless, she scheduled him to see the doctor. When the doctor met with Barner on May 4, 2007, he also saw no visible symptoms of the injuries that Barner had claimed and evaluated Barner's gait as "normal." The doctor concluded that Barner's medical complaints were "fictitious."

---

[5] Barner also told the nurse that he had suffered a concussion. His complaint, however, does not allege that he suffered from a concussion or state any specific symptoms on which he based this self-diagnosis as reported to the nurse.

-9-

Some of the injuries alleged in Barner's complaint might be considered more than de minimis: broken pinky finger, sprained ankle, back pain, jammed right index finger, sprained right wrist, and cuts to his wrists. At this late state of the litigation, however, his conclusory allegations cannot preserve his claim. He offers no allegation or documentation that contradicts defendants' very specific evidence that two medical professionals, who examined him within days after the injuries allegedly occurred, did not observe any symptoms of the serious injuries he claims. Defendants' evidence reasonably supports a finding that his injuries from defendants' use of physical contact were merely de minimis, which, in turn, supports a finding that the force used was also de minimis and, therefore, not unconstitutional. On the other hand, the court finds that Barner has failed to forecast sufficient evidence so as to create a genuine issue of material fact as to the extent of his injuries. Therefore, the court concludes that defendants are entitled to judgment as a matter of law as to all Barner's claims of excessive force related to defendants' use of physical force against him.

## Conclusion

For the stated reasons, the court concludes that defendants are entitled to judgment as a matter of law. An appropriate order will issue this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and counsel of record for the defendants.

ENTER: This 30th day of July, 2009.

_____
United States District Judge